IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATASHA S. COLBERT, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-2770 |
| | § | |
| HARRIS CO. JUVENILE | § | |
| PROBATION, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This Americans with Disabilities Act, as amended ("ADA") and Rehabilitation

Act ("RA") case is before the Court on cross-motions for summary judgment. These

motions are ripe for review.[1] After carefully reviewing the parties' briefing, all

matters of record, and the applicable legal authorities, the Court concludes that the

parties' fact-intensive arguments present genuine issues of material fact on each

essential elements of Plaintiff's claims and Defendant's affirmative defenses.

Plaintiff's and Defendant's Motions for Summary Judgment are **denied**.

---

[1]     Plaintiff Natasha Colbert ("Plaintiff" or "Colbert") filed a Motion for Partial
Summary Judgment ("Plaintiff's Motion") [Doc. # 46], to which Defendant Harris
County Juvenile Probation ("Defendant" or "HCJPD") filed a Response
("Defendant's Response") [Doc. # 53]. Plaintiff did not file a reply or request for
additional time to do so. Defendant filed a Motion for Summary Judgment
("Defendant's Motion") [Doc. # 45], to which Plaintiff filed a Response ("Plaintiff's
Response") [Doc. # 49] and motions to strike various portions of Defendant's
summary judgment evidence [Docs. # 50, # 51, # 52]. Defendant filed a Reply [Doc.
# 54] and "Supplemental Reply" [Doc. # 55].

I.    **BACKGROUND**

A.    **Facts**

Colbert alleges that HCJPD discriminated against her on the basis of her disability, a hearing impairment, by rescinding her offer of employment as a Juvenile Supervising Officer ("JSO") upon learning that she could not use a two-way radio. *See* Plaintiff's First Amended Complaint ("Amended Complaint") [Doc. # 32]. Colbert alleges she is "substantially limited in hearing" and her "ability to communicate [is] impaired without mitigating measures such as hearing aids, sign language, two-way pages, and other assistive technology." *Id.*, at 2-3.

HCJPD states that it operates four pre- and post-adjudication juvenile detention centers. *See* Motion, at 4. According to HCJPD's posted job description for the JSO position, a copy of which Colbert provided, JSOs are responsible for the safety and welfare of the juvenile residents in HCJPD detention centers, and JSOs' duties include supervising residents, transporting them throughout the facility, and functioning as a role model. Announcement Number: 15004–T ("JSO Job Description") [Doc. # 49-9], at ECF page 1.

Colbert interviewed for the JSO position in Spring 2012. Amended Complaint, at 3. She received an offer of employment after completing several steps of the interviewing and screening process, including an initial interview, a psychological

evaluation, and a medical exam. *See id.*, at 3-4; Defendant's Second Amended Answer ("Second Amended Answer") [Doc. # 42], at 2-5. The offer was rescinded shortly after Colbert informed HCJPD that she could not use a two-way radio. Amended Complaint, at 5.

HCJPD claims that Colbert misrepresented in her initial interview that she could use the two-way radio. Colbert disputes what was said at the initial interview and asserts that HCJPD violated the ADA and RA by rescinding her job offer.

### B.  Procedural History

Colbert initially sued HCJPD on April 16, 2013 as a *pro se* plaintiff in the Middle District of Tennessee. Complaint Under Title VII of the Civil Rights Act of 1964 [Doc. # 1]. Her case was transferred to this Court on September 19, 2013 [Doc. # 20]. Colbert subsequently obtained an attorney [Doc. # 24] and filed an Amended Complaint on February 28, 2014 [Doc. # 32]. Discovery ended on October 1, 2014. The parties filed cross-motions for summary judgment, which are ripe for review.

## II.  SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to her case and on which she will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d

587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.

1994) (en banc).  Summary judgment "should be rendered if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." FED. R. CIV. P.  56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d

at 594.

The initial burden falls on the movant to identify areas essential to the non-

movant's claim in which there is an "absence of a genuine issue of material fact."

*ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th

Cir. 2012).  If the moving party meets its initial burden, the non-movant must go

beyond the pleadings and designate specific facts showing that there is a genuine issue

of material fact for trial.  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir.

2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001)

(internal citation omitted).  In deciding whether a genuine and material fact issue has

been created, the court reviews the facts and inferences to be drawn from them in the

light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit

& Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  A genuine issue of material fact

exists when the evidence is such that a reasonable jury could return a verdict for the

non-movant.  *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Reaves Brokerage*, 336 F.3d at 413.

## IV. ANALYSIS

Plaintiff Colbert brings three causes of action: (1) an ADA disability discrimination claim, (2) an ADA failure-to-accommodate claim, and (3) an RA § 504 disability discrimination claim.[2] Defendant HCJPD asserts the affirmative defense of "direct threat." Second Amended Answer, ¶ 24.[3] As explained below, Colbert

---

[2] Plaintiff's Amended Complaint includes two causes of action: "Americans with Disabilities Act, As Amended" and "Section 504 of the Rehabilitation Act of 1973." Amended Complaint, at 6-7. Under the heading for the ADA cause of action, Plaintiff asserts two separate theories. She claims that (1) "Defendant illegally discriminated against Plaintiff in violation of the ADA" and (2) "Defendant intentionally, with malice and reckless indifference of Plaintiff's rights, violated the ADA by refusing to reasonably accommodate her disability." *Id.*, ¶¶ 28-29. The parties appear to make arguments concerning both these theories in the briefing. The Court construes the first theory to be a disability discrimination claim and the second a failure-to-accommodate claim.

[3] Defendant's briefing suggests that HCJPD also asserted an affirmative "business necessity" defense. *See* Defendant's Response, at 6-7. However, HCJPD did not allege business necessity as an affirmative defense in its Second Amended Answer.
(continued...)

contests the admissibility of several key pieces of HCJPD's evidence. On the basis of the incomplete summary judgment evidence properly before the Court, all three claims (and associated defenses) raise similar factual disputes that preclude summary judgment for either party.

### A.     Colbert's Motions to Strike Defendant's Affidavits

The Court first addresses Colbert's three motions to strike the affidavits of Melton J. Finley ("Finley"), a JSO shift supervisor who testifies about the JSOs' duties and importance of JSOs being able to use a two-way radio without modification, Craig S. Bernard ("Bernard"), the Director of Radio Services for HCJPD who testifies about the feasibility of modifying the radios to accommodate Colbert's disability, and Dr. Ross Tonini ("Tonini"), a doctor who evaluated Colbert for the purposes of this litigation to determine the extent of her hearing impairment and visited one of HCJPD's facilities to assess how Colbert would be able to hear in the HCJPD working environment. *See* Plaintiff's Motion to Strike Affidavit of Dr. Ross Tonini ("Motion to Strike Tonini Affidavit") [Doc. # 50]; Plaintiff's Motion to

---

[3]     (...continued)
This defense, therefore, is not properly before the Court. Defendant's Second Amended Answer did assert an immunity defense. Second Amended Answer, ¶ 23 ("Harris County affirmatively pleads the statutory caps on liability set forth in 42 U.S.C. section 12101 *et seq.* and asserts the defenses of governmental and sovereign immunity."). Defendant's briefing and motion for summary judgment did not address this defense. Defendant must notify the Court in writing on or before **January 12, 2015** if it intends to continue pursuing an immunity defense.

Strike Affidavit of Craig S. Bernard ("Motion to Strike Bernard Affidavit") [Doc. # 51];  Plaintiff's Motion to Strike Affidavit of Mr. Melton Finley ("Motion to Strike Finley Affidavit") [Doc. # 52] (collectively, "Plaintiff's Motions to Strike").

It is unclear whether Colbert here attempts belatedly to file motions under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Colbert objects to Tonini's Affidavit as "not sufficiently based on facts" and Finley's Affidavit as "stat[ing] facts that are not part of his personal knowledge."  Motion to Strike Tonini Affidavit, at ECF page 1; Motion to Strike Finley Affidavit, at ECF page 2.  "In *Daubert*, the Supreme Court 'explained that Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).  Pursuant to *Daubert* and Rule 702 of the Federal Rules of Evidence, courts assess challenges to expert testimony under a framework involving multiple steps and factors.  Colbert has not meaningfully addressed any of these matters in support of her motions.  The Court, accordingly, declines to strike these materials on this ground.

Colbert further objects to Bernard's affidavit on several other grounds, including that it contains inadmissible hearsay and relies on documents not properly

disclosed to Colbert during discovery. For example, Bernard states, "I asked [Motorola] if they offer a device that would provide a visual display of the text of all transmittals made on the radio for a user. Motorola's response is that they do not make such a device." Affidavit of Craig S. Bernard [Doc. # 45-7], at 2. The Court does not rely on hearsay or other inadmissible statements in the affidavit in making the rulings below denying summary judgment.

Finally, Colbert objects to all three affidavits on the ground that they were produced after the close of discovery. HCJPD responds that Colbert chose not to depose these witnesses before the close of discovery, even though all three names were included in Defendant's Designation of Experts [Doc. # 44]. HCJPD timely disclosed Tonini's report [Doc. # 44-1], but failed to provide expert reports or other materials from Finley and Bernard on or before the expert designation deadline in the Court's Docket Control Order [Doc. # 29]. *See* FED. R. CIV. P. 26(a)(2)(B). HCJPD, without citing to any legal authority, asserts that it was not required to submit expert reports for Finley and Bernard because they are employees. Reply, at 3. Nonetheless, HCJPD attempts to address the admissibility issues raised by Colbert by providing supplemental affidavits to clarify Finley's and Bernard's testimony and credentials. *See* Affidavit of Craig Bernard dated Nov. 17, 2014 [Doc. # 54-1]; Affidavit of Melton L. Finley dated Nov. 13, 2014 [Doc. # 53-6]. These supplemental affidavits, however, raise further issues regarding what was disclosed to Colbert before the close

of discovery.

As elaborated below, the issues addressed by these witnesses are central to the key disputes in this case. The interests of justice dictate that the topics addressed in the affidavits be adequately developed. The Court, therefore, will reopen discovery for the limited purpose of both parties' obtaining and designating experts who will issue formal reports specifying their scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, and the bases for this knowledge, in addition to all the requirements of Federal Rule of Civil Procedure 26(a)(2)(B) and Federal Rules of Evidence 702, 703, and 705. The parties may take the designated experts' depositions, if deemed necessary.

The Court next considers the parties' arguments about Colbert's claims and HCJPD's affirmative defenses in light of the uncontested summary judgment evidence.

### B. **Disability Discrimination Claim**

"The ADA prohibits covered employers from 'discriminat[ing] against a qualified individual on the basis of disability.'" *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(a)) (alteration in original). To prove discrimination under the ADA, a plaintiff "may either present direct evidence that she was discriminated against

because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a Title VII case." *E.E.O.C. v. LHC Grp., Inc.*, – F.3d –, No. 13-60703, 2014 WL 7003776, at *3 (5th Cir. Dec. 11, 2014); *see also E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000).[4]

Colbert relies on circumstantial or indirect evidence of discrimination, and thus the Court considers her claim under the *McDonnell Douglas* burden-shifting framework. Colbert must first establish a *prima facie* case of discrimination. *Id.* If Colbert meets this burden, then HCJPD has the burden to articulate a legitimate, non-discriminatory reason for rescinding her offer of employment. *Id.* If HCJPD does so, the burden shifts back to Colbert to prove that HCJPD's proffered non-discriminatory reason is pretextual. *See LHC Grp., Inc.*, 2014 WL 7003776, at *3; *McInnis*, 207 F.3d at 280.

### 1.    Colbert's *Prima Facie* Case of Discrimination

The Fifth Circuit very recently clarified that "'[t]o establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a

---

[4]    The parties did not cite to or conform their arguments to the full legal standard for an ADA disability discrimination claim. The Court construes the parties' arguments in light of the appropriate legal standard.

disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability.'" *LHC Grp., Inc.*, 2014 WL 7003776, at *5 (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)) (second alteration in original).[5]

The parties agree that Colbert has a "severe" or "profound" hearing impairment and do not dispute that she is disabled within the meaning of the ADA. The parties, however, strongly dispute the second and third elements of Colbert's *prima facie* case on her disability discrimination claim, whether she is a "qualified individual" and whether she was subject to an adverse employment decision on account of her disability.

### a. Whether Colbert is a "Qualified Individual"

#### i. Essential Functions of a JSO

A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Crossley v. CSC Applied*

---

[5]     In *LHC Group*, the Fifth Circuit discusses prior inconsistencies in Fifth Circuit law regarding what exactly a plaintiff must prove for a *prima facie* case to establish causation, the third element, sometimes characterized as the third and fourth elements. *See LHC Grp., Inc.*, 2014 WL 7003776, at *3-5. The Court does not address this legal issue here, as it has not been briefed and there clearly are genuine fact issues precluding summary judgment on other grounds. The Court cites to *LHC Group* as it represents the most recent statement by the Fifth Circuit of the ADA legal standard.

*Techs., L.L.C.*, 569 F. App'x. 196, 198 (5th Cir. 2014). "A function is essential if it bears 'more than a marginal relationship' to the employee's job." *LHC Grp. Inc.*, 2014 WL 7003776, at *5 (quoting *Chandler v. City of Dallas* 2 F.3d 1385, 1393 (5th Cir. 1993), *holding modified on other grounds as discussed in Kapche v. City of San Antonio*, 304 F.3d 493 (5th Cir. 2002) (per curiam)). "Fact-finders must determine whether a function is 'essential' on a case-by-case basis." *Id.* at *6 (citing Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. pt. 1630, app. § 1630.2(n)). According to EEOC regulations, "'[e]vidence of whether a particular function is essential includes, but is not limited to: (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.'" *Crossley*, 569 F. App'x at 198 n.1 (5th Cir. 2014) (quoting 29 C.F.R. § 1630.2(n)(3)(i)-(vii)).

The parties dispute whether using a two-way radio is an essential function of a JSO. HCJPD argues that using the two-way radio is included in the JSO written job description requiring the "ability to communicate effectively in written and oral

forms." *See* JSO Job Description, at ECF page 1. HCJPD further contends that the importance of the two-way radio was emphasized in the interviewing process. Upon learning that Colbert requested a sign language interpreter for her initial interview, Matthew Shelton ("Shelton"), Deputy Director of Administrative Services, apparently in conjunction with the interview team, determined that the interviewers would specifically ask Colbert about her ability to use a two-way radio in light of her apparent hearing impairment. *See* Defendant's Motion, at 4 (citing Oral Deposition of Matthew Shelton [Doc. # 45-4], at ECF page 4).[6]

Colbert counters that the job description does not mention using a two-way radio anywhere and potential JSO candidates generally are not asked about their

---

[6]       It is unclear from the record who exactly decided that HCJPD needed to ask Colbert a specific question about using the two-way radio. Furthermore, Colbert disputes what actually was asked and answered at her initial interview about the two-way radio. HCJPD states, "Shelton and his assistant also looked over the job description for a JSO and began discussing the relevant questions for the interview of a job candidate with a hearing impairment . . . . Shelton and the JSO supervisor who was conducting the interviews . . . decided to ask the Plaintiff whether she could use a two way radio . . . ." Defendant's Motion, at 4; *see also* Defendant's Response, at 6. However, in his deposition, Shelton actually testifies that he looked over the job description with Bianca Malveaux ("Malveaux"), the human resources supervisor who reported at the time directly to him. Oral Deposition of Matthew Shelton [Doc. # 49-4], at ECF page 4. Malveaux then allegedly had a meeting with Dennis Englade ("Englade"), a JSO supervisor, and Roberta Wise (f/k/a Roberta Ortiz) ("Wise"), a human resources employee at the time. *Id.* According to Shelton, at this meeting, Malveaux, Wise, and Englade came up with the question to ask Colbert about her ability to use the two-way radio. *Id.*, at ECF pages 4-5. Shelton does not testify that he spoke directly with Wise or Englade about this issue. Wise and Englade apparently conducted Colbert's interview with neither Shelton nor Malveaux present. *Id.*, at ECF pages 5, 22.

ability to use a two-way radio. Plaintiff's Response, at 10-11 (citing JSO Job Description). Colbert further questions whether Shelton was qualified to make the decision about the importance of needing to use the two-way radio as a JSO because Shelton is not a JSO and he admits to never needing to use the two-way radio in his current position. Plaintiff's Response, at 10 (citing Oral Deposition of Matthew Shelton [Doc. # 49-4], at ECF pages 9, 12).[7] Finally, Colbert argues that HCJPD acknowledged she could perform the essential functions of a JSO by medically clearing her and offering her the position after a multi-step interview process.

HCJPD's strongest evidence supporting its position that using a two-way radio bears "more than a marginal relationship" to the JSO position is Finley's affidavit. HCJPD relies heavily on this affidavit in its briefing as the primary source of information about what a JSO actually does. Given the admissibility concerns discussed above and Colbert's objections to the timeliness of the information in Finley's affidavit, the Court declines to award summary judgment at this time on the basis of this evidence, which must be tested by cross examination. There remains a

---

[7]    Colbert makes similar arguments about Wise and her abilities to assess the importance of a JSO needing to use a two-way radio and to question Colbert about using a two-way radio, given that Wise admits she did not know at the time of Colbert's interview what specific type of radio JSOs used. *See* Plaintiff's Response, at 7 (citing Oral Deposition of Roberta Wise [Doc. # 49-5], at ECF pages 13-14). Colbert does not make any arguments on this issue specifically related to Malveaux or Englade.

genuine dispute of material fact on this record regarding whether using the two-way radio is an essential function of a JSO.

## ii.    Reasonable Accommodations

"Under the ADA, a reasonable accommodation may include: (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." *Feist*, 730 F.3d at 453 (quoting 42 U.S.C. § 12111(9)).

Colbert argues that reasonable accommodations to enable her to use the two-way radio include "video," "text," "pagers," "noise reduction devices," and "cochlear implants." Plaintiff's Response, at 5. In support of these arguments, Colbert provides a copy of a radio manual stating that a text messaging function is available. *See* Astro XTS 2500 & XTS 2500I Model 3 User Guide [Doc. # 49-7].[8] While this is sparse

---

[8]    Colbert also cites to Shelton's deposition testimony that HCJPD employs five JSOs with "hearing loss." Plaintiff's Response, at 15; *see also* Oral Deposition of Matthew Shelton [Doc. # 49-4], at ECF page 13. The record does not contain any specifics about these employees. Apparently, one employee was given the opportunity to take leave to receive a cochlear implant in order to address his or her hearing impairment.
(continued...)

evidence supporting her reasonable accommodation theories, and HCJPD has submitted strong arguments that, in the particular setting presented, there are no reasonable accommodations, the record is insufficient for the Court to reach this conclusion as a matter of law. HCJPD argues that all of the proposed modifications to the radio are too expensive or not feasible (according only to Bernard's testimony), text messaging is not practical in light of the JSOs' duties and responsibilities (according only to Finley's testimony), and a noise cancelling microphone will not be enough to overcome Colbert's severe hearing impairment (according to Tonini's testimony and report). HCJPD's arguments, however, rely solely on the three affidavits discussed above that present several admissibility issues, especially Bernard's and Finley's affidavits, which were not disclosed before the close of discovery. Viewing the evidence in the light most favorable to each "non-movant," Colbert or HCJPD, respectively on their competing motions for summary judgment, there remain various genuine disputes of material fact with regard to whether a reasonable accommodation is available to assist Colbert in using, or avoiding the need to use, the two-way radio. Neither party has demonstrated entitlement to judgment

---

[8]    (...continued)
       Plaintiff's Response, at 15. It is unclear whether Colbert is arguing that she should
       have received the same opportunity to have time to get the cochlear implant before
       HCJPD rescinded her offer, or if she is arguing that HCJPD was required to pay for
       her to receive a cochlear implant. The arguments raise different legal issues and none
       has been meaningfully briefed by Colbert.

as a matter of law on the present factual record.

The parties also dispute the extent to which HCJPD was required to engage in an interactive process with Colbert. "'[O]nce the employee presents a request for an accommodation, the employer is required to engage in [an] interactive process so that together they can determine what reasonable accommodations might be available.'" *LHC Grp. Inc.*, 2014 WL 7003776, at *8 (quoting *Chevron Phillips Chem. Co., LP*, 570 F.3d at 622) (second alteration in original). "'[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA.'" *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735 (5th Cir. 1999)) (alteration in original). It appears that HCJPD did not explore whether a reasonable accommodation was available before rescinding Colbert's offer. *See* Oral Deposition of Matthew Shelton [Doc. # 49-4], at ECF page 8; Oral Deposition of Roberta Wise [Doc. # 49-5], at ECF page 8. HCJPD, however, cites to an unpublished decision, *Silva v. City of Hidalgo, Texas*, 575 F. App'x 419 (5th Cir. 2014), for the proposition that there can be no ADA violation as a matter of law because there was no possible reasonable accommodation for Colbert, and thus any interactive process could not "lead to" a reasonable accommodation. HCJPD's argument relies on the outcome of an underlying factual dispute, whether there was an accommodation that was reasonable for HCJPD to offer

Colbert. Thus, the issue of whether HCJPD is liable for failing to engage in a good faith interactive process that led to a failure to reasonably accommodate an employee cannot be decided on summary judgment.

### b. Whether Colbert Was Subject to An Adverse Employment Decision On Account of Her Disability

Viewing the evidence in the light most favorable to Colbert, she has raised a genuine fact issue on the causation element of her *prima facie* case of discrimination that she suffered an adverse employment action on account of her disability. The parties do not dispute that Colbert suffered an adverse employment decision when HCJPD rescinded its offer for her to be a JSO. Furthermore, it is undisputed that Colbert's offer was rescinded shortly after she asked HCJPD for an accommodation for the two-way radio. *See* Oral Deposition of Matthew Shelton [Doc. # 49-4], at ECF page 5. This evidence is sufficient to raise a genuine fact issue on the third *prima facie* element. Summary judgment is not warranted on the basis of Colbert's failure to establish a *prima facie* case of discrimination. The Court turns to the second step of the *McDonnell Douglas* test.

### 2. HCJPD's Non-Discriminatory Reason for Rescinding Colbert's Offer

As discussed above, under the *McDonnell Douglas* framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse

employment decision. *See LHC Grp., Inc.*, 2014 WL 7003776, at *5; *Chevron Phillips Chem. Co., LP*, 570 F.3d at 615; *McInnis*, 207 F.3d at 279-80. The burden on the employer to show a legitimate or non-discriminatory reason for its decision "is a burden of production, not persuasion." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)) (applying the *McDonnell Douglas* analysis in a Title VII case). The employer "'must clearly set forth, through the introduction of admissible evidence, the reasons for [the adverse employment decision].'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

In a letter dated May 24, 2012, HCJPD states that it is rescinding Colbert's offer because she made a misrepresentation in her initial interview about her ability to use the two-way radio. *See* Letter dated May 24, 2012 [Doc. # 46-1], at ECF page 1. HCJPD now offers several pieces of evidence in support of this position, the admissibility of which has not been contested, including notes from Colbert's initial interview and deposition testimony from Shelton, the employee who sent Colbert the letter rescinding her offer. *See* Oral Deposition of Matthew Shelton [Doc. # 45-5], at ECF pages 3, 6; Interview Notes and Handwritten Notes [Doc. # 45-6]. HCJPD, thus, has satisfied its burden to articulate a non-discriminatory reason for rescinding Colbert's offer. Under the *McDonnell Douglas* framework, the burden shifts back to Colbert to show that the proffered reason is pretextual.

### 3. Whether HCJPD's Proffered Reason is Pretextual

To satisfy her summary judgment burden on pretext, Colbert must "'offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).'" *LHC Grp., Inc.*, 2014 WL 7003776, at *10 (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)) (alteration in original); *see also Jurach v. Safety Vision, LLC*, Civ. Action No. H-14-044, 2014 WL 7151470, at *8 (S.D. Tex. Dec. 12, 2014) (Rosenthal, J.); *Holloway v. ITT Educ. Servs., Inc.*, Civ. Action No. H-13-1317, 2014 WL 4273896, at *7 (S.D. Tex. Aug. 28, 2014) (Lake, J.).

Colbert has not made any arguments, or even allegations, of HCJPD having a "mixed-motive." This issue, therefore, is not before the Court. Colbert has, however, offered evidence disputing that she made a misrepresentation at the initial interview. *See* Declaration of Natasha Colbert, ¶ 4. There is a genuine issue of material fact regarding whether HCJPD's nondiscriminatory reason for rescinding Colbert's offer is not true, and thus is pretextual.

### 4.    HCJPD's Affirmative Defense of "Direct Threat"

Defendant asserts an affirmative defense of "direct threat" under 42 U.S.C. § 12113(b).  Second Amended Answer, ¶ 24.  "[E]ven if an employer discriminates against a 'qualified individual with a disability,' that employer can avoid liability by asserting a legitimate justification for its action, including that the plaintiff, if hired, would 'pose a direct threat to the health or safety of other individuals in the workplace.'"  *Rodriguez v. ConAgra Grocery Products Co.*, 436 F.3d 468, 474 (5th Cir. 2006) (quoting 42 U.S.C. § 12113(b)).  "A direct threat is a 'significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation.'"  *E.E.O.C. v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 731 (5th Cir. 2007) (quoting (42 U.S.C. § 12111(3)).  "The employer must make an 'individualized assessment of the individual's present ability to safely perform the essential function of the job.'"  *E.I. Du Pont de Nemours & Co.*, 480 F.3d at 731 (quoting *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86 (2002)); 29 C.F.R. § 1630.2(r).  The ADA provides a list of factors for courts to consider in determining whether an employee's disability poses a direct threat: "(1) The duration of the risk; (2) The nature and severity of the potential harm; (3) The likelihood that the potential harm will occur; and (4) The imminence of the potential harm."  29 C.F.R. § 1630.2(r)(1)-(4); *see also Chevron U.S.A. Inc.*, 536 U.S. at 86.

Again, the parties' arguments on this issue are highly fact-intensive.[9]  Colbert argues that HCJPD cannot claim she poses a direct threat to the working environment in light of the fact that it medically cleared her for employment as a JSO after a fairly extensive interview process and with knowledge at the time that she was hearing impaired.  Plaintiff's Motion, at 8.  HCJPD argues that the doctor made a mistake in medically clearing Colbert for employment, and its human resources employees were unable to discover this mistake before offering Colbert the JSO position.  Defendant's Response, at 3-5.  HCJPD does not offer any additional arguments or evidence directly related to its direct threat defense.[10]  The current factual record simply is

[9]      In addition to several fact-based arguments, Colbert contends that HCJPD's direct threat defense should be dismissed as a matter of law because HCJPD relies on evidence from Tonini's medical examination, which was conducted after HCJPD made the decision to rescind Colbert's offer.  Plaintiff's Motion, at 9-10.  Given that there clearly are genuine issues of material fact precluding summary judgment on other grounds, the Court declines to reach this legal issue.  However, the Court notes that it is far from clear that HCJPD's direct threat defense relies solely on Tonini's medical examination.  Also, Colbert's argument mistakenly relies on a First Circuit case vacated by the Supreme Court and two older Supreme Court decisions that are not on point.  *See* Response at 9-10 (citing *Abbott v. Bragdon*, 524 U.S. 624, 650 (1998) (holding that whether a healthcare professional's medical opinion is objectively reasonable should be assessed in light of the available, objective evidence); *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995) (discussing how after-acquired evidence impacts the "mixed-motives" analysis and holding that an employer could not have been motivated to terminate an employee based on after-acquired evidence); *Abbott v. Bragdon*, 107 F.3d 934, 944 (1st Cir. 1997), *vacated by* 524 U.S. 624 (1998)).

[10]      HCJPD discusses the high rate of incidents involving violent behavior at HCJPD facilities and that JSOs often need to quickly respond to emergencies.  Defendant's Motion, at 7-8.  However, these statements are all made in the context of HCJPD's argument that using the two-way radio is an essential function, and not HCJPD's

(continued...)

inadequate to establish as a matter of law that employing Colbert as a JSO does or does not pose a direct threat to the health or safety to employees and residents of the HCJPD workplace facilities.

Accordingly, summary judgment is denied on both parties' motions regarding Colbert's ADA disability discrimination claim.

### C.    **Failure-to-Accommodate Claim**

To succeed on an ADA failure-to-accommodate claim in the Fifth Circuit, the plaintiff must prove that: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist*, 730 F.3d at 452; 42 U.S.C. § 12112(b)(5)(A). Courts use the same standards discussed above to assess whether someone is a "qualified individual" and what constitutes a "reasonable accommodation."   HCJPD's affirmative defense of "direct threat" applies to this claim as well.

It is undisputed that Colbert requested an accommodation for the two-way

---

[10]      (...continued)
direct threat defense.  Moreover, Finley's affidavit is the only evidence HCJPD offers in support of these statements.  Finley does not provide documentation supporting his statistics about the high rate of incidents in HCJPD facilities or even establish where the statistics in his affidavit come from.  Colbert objects to Finley's statements on the grounds that HCJPD did not timely provide an expert report for Finley.  As explained above, the Court is reopening discovery in light of Colbert's objections to allow the record to be fully developed on these issues.

radio. Summary judgment is not warranted on this issue because there remain genuine disputes of material fact such as whether Colbert is a "qualified individual," whether a "reasonable accommodation" was available, and whether employing Colbert as a JSO does or does not pose a direct threat to the health or safety to employees and residents of the HCJPD workplace facilities.

### D.  Section 504 of the RA

"To qualify for relief under the Rehabilitation Act, a plaintiff must prove that (1) he is an 'individual with a disability'; (2) who is 'otherwise qualified'; (3) who worked for a 'program or activity receiving Federal financial assistance'; and (4) that he was discriminated against 'solely by reason of her or his disability.'" *Hileman v. City of Dallas, Tex.*, 115 F.3d 352, 353 (5th Cir. 1997) (quoting 29 U.S.C. § 794(a)); *accord Shah v. Univ. of Tex. Sw. Med. Sch.*, Civ. Action No. 3:13-CV-4834-D, 2014 WL 5326658, at *17 (N.D. Tex. Oct. 20, 2014) (Fitzwater, J.).  The ADA and RA generally apply the same standards for determining who is a "qualified individual." *See Cohen v. Univ. of Tex. Health Sci. Ctr.*, 557 F. App'x 273, 277 (5th Cir. 2014); *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).  Therefore, there exist genuine disputes of material fact regarding this second element of Colbert's claim.

It is noted that Plaintiff has not directed the Court to any evidence in the record that HCJPD receives federal funding, but HCJPD does not appear to dispute this element.  *See* Defendant's Motion, ¶ 36.

The RA contains a more stringent causation standard than the ADA.  *See Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005); *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002).  "[T]he proper question to be asked in a Rehabilitation Act claim is whether the discrimination took place 'solely because of' the disability."  *Soledad*, 304 F.3d at 505.  However, the parties did not brief the issue of whether HCJPD rescinded Colbert's offer *solely* because of her disability, and thus the Court declines to decide this fact-intensive question on summary judgment.  Summary judgment for both parties is denied on Colbert's disability discrimination claim under RA § 504.

## IV.   CONCLUSION AND ORDER

For the reasons stated above, it is hereby

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. # 46] is **DENIED**.  It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 45] is **DENIED**.  It is further

**ORDERED** that Plaintiff's Motion to Strike Affidavit of Dr. Ross Tonini [Doc. # 50], Plaintiff's Motion to Strike Affidavit of Craig S. Bernard [Doc. # 51], and Plaintiff's Motion to Strike Affidavit of Mr. Melton Finley [Doc. # 52] each are **DENIED without prejudice**.  It is further

**ORDERED** that Defendant must notify the Court in writing on or before **January 12, 2015** if it intends to continue to pursue an immunity defense, and, if so, whether it intends to file a dispositive motion on this issue.  It is further

**ORDERED** that the parties are **required to mediate** this case again on or before **April 3, 2015**.  The Court directs the parties to address in mediation, *inter alia*, what constitutes a reasonable accommodation in this case and why a reasonable accommodation is or is not available.  It is further

**ORDERED** that the following deadlines for experts and associated discovery are **extended** to the following dates:

- Deadline to **designate experts for a party with the burden of proof on an issue**, to provide expert reports, and to provide all other material required by FED. R. CIV. P. 26(a)(2)(B) is extended to **February 13, 2015**.

- Deadline to **designate experts for a party without the burden of proof on an issue**, to provide expert reports, and to provide all other material required by FED. R. CIV. P. 26(a)(2)(B) is extended to **March 13, 2015**.

- Deadline for **dispositive and for *Daubert* and other non-dispositive motions** is reset to **April 10, 2015**; responses are due **May 1, 2015**; and replies are due **May 8, 2015**.

- The **Joint Pretrial Order** is due **July 8, 2015**.

- **Docket Call** is set for **July 16, 2015**.

- **Trial** is set for **July 20, 2015**.

**<u>No continuances of these deadlines will be granted.</u>**

SIGNED at Houston, Texas, this _30_ day of **December**, **2014.**

Nancy F. Atlas
United States District Judge